# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **BRENDA J. BROOKMAN,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:04cv00076 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | By:  Pamela Meade Sargent |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Brenda J. Brookman, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517

-1-

(4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Brookman filed her application for DIB on September 5, 1998, alleging disability as of October 4, 1997, based on scoliosis and degenerative disc disease. (R. at 64-71, 73.) Brookman's claim was denied initially and on reconsideration. (R. at 39-41, 42, 44-46.) Brookman then requested a hearing before an administrative law judge, ("ALJ"), (R. at 47). By order dated December 14, 1999, the ALJ remanded the case to the state agency for further review. (R. at 208-10.)

On remand, Brookman's claim was again denied. (R. at 231.) Brookman again requested a hearing before and ALJ, (R. at 233), and that hearing was held on April 25, 2001, and at which Brookman was represented by counsel. (R. at 444-75.) By decision dated May 17, 2001, the ALJ found that Brookman was disabled and entitled to DIB benefits beginning December 6, 2000, but not before. (R. at 218-30.) After the ALJ issued his opinion, Brookman pursued her administrative appeals of the partially unfavorable decision. (R. at 252.) The Appeals Council granted her request for review, vacated that portion of the ALJ's opinion denying benefits prior to December 6, 2000, and remanded the case to the ALJ. (R. at 255-57.)

-2-

On remand, the ALJ held a supplemental hearing on September 5, 2002, at which Brookman was again represented by counsel. (R. at 476-90.) The ALJ held an additional supplemental hearing on December 19, 2002, at which Brookman was represented by counsel. (R. at 491-523.) By decision dated, February 12, 2003, the ALJ again found Brookman disabled as of December 6, 2000, but he denied Brookman's claim for benefits prior to December 6, 2000. (R. at 20-34.) The ALJ found that Brookman had not engaged in substantial gainful activity since her alleged onset date. (R. at 33.) The ALJ also found that, during the relevant period, the medical evidence established that Brookman had a severe impairment, namely a back impairment, but he found that Brookman did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 33.) The ALJ found that Brookman's allegations of disability prior to December 6, 2000, were not credible. (R. at 33.) The ALJ found that, prior to December 6, 2000, Brookman had the residual functional capacity to perform sedentary work[1] that allowed her to alternate between sitting and standing. (R. at 33.) The ALJ did not specifically address whether Brookman could perform her past relevant work, but because it continued to the next step, it is assumed that she could not. Based on Brookman's age, education, past work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that, prior to December 6, 2000, jobs existed in significant numbers in the national economy which Brookman could perform. (R. at 33-34.) Therefore, the ALJ concluded that

---

[1]Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. *See* 20 C.F.R. 404.1567(a) (2005). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a).

-3-

Case 3:04-cv-00076-NKM-PMS    Document 23    Filed 09/27/05    Page 3 of 15    Pageid#: 101

Brookman was not under a disability as defined by the Act and was not eligible for DIB benefits prior to December 6, 2000. (R. at 34.) *See* 20 C.F.R. § 404.1520(g) (2005).

After the ALJ issued his opinion, Brookman pursued her administrative appeals, (R. at 16), but the Appeals Council denied her request for review. (R. at 12-15.) Brookman then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2005). The case is before this court on Brookman's motion for summary judgment filed August 15, 2004, and on the Commissioner's motion for summary judgment filed September 19, 2005.

*II. Facts*

Brookman was born in 1956, (R. at 64), which, at the time of the ALJ's decision, classified her as a "younger person" under 20 C.F.R. § 404.1563(c) (2005). She has a seventh-grade education and past relevant work experience as a school bus driver and a clerk/cashier. (R. at 90, 114.)

In rendering his decision, the ALJ reviewed records from Martha Jefferson Medical Services; Dr. Greg Anderson, M.D.; the University of Virginia Health System; Dr. Patricia J. Shipley, M.D.; Beverly L. Supler, Ph.D.; Dr. Randolph E. Lanford, M.D.; Dr. Robert S. Brown Jr., M.D.; Dr. William Hammond, M.D.; F. Daniel McClure, Ph.D.; Spectrum Therapy; Dr. David Heilbronner, M.D.; Dr. Donald P. K. Chan, M.D.; and Dr. Michael J. Kovac, M.D.

Because Brookman is challenging the ALJ's finding as to the severity of her mental impairment prior to December 6, 2000, I will address only that medical evidence which addresses her mental condition prior to December 6, 2000. The first mention of any psychiatric or psychological symptoms or treatment contained in this record is found in a December 8, 1997, report from Dr. Michael J. Kovac Jr., M.D. (R. at 145.) On this date, Dr. Kovac, who was treating Brookman for continuing complaints of low back pain after a motor vehicle accident, noted that Brookman's treating family nurse practitioner, Vicki Generelly, had prescribed Diazepam for Brookman. (R. at 145.) Also in December 1997, Brookman saw Dr. David M. Heilbronner, M.D., for a second opinion regarding her back pain. (R. at 151.) Dr. Heilbronner noted that Brookman was taking Valium at that time. (R. at 151.)

In March 1998, Brookman saw Generelly on at least two occasions and complained of insomnia and anxiety. (R. at 178, 181.) On July 24, 1998, Generelly noted that Brookman occasionally took Valium. (R. at 176.)

On February 4, 1999, Brookman filed a Reconsideration Disability Report on which she stated that she was short-tempered and "snappy." (R. at 136-39.) On January 16, 2000, Brookman filed a Reconsideration Disability Report on which she stated that she was very depressed. (R. at 300.) Brookman reported difficulty sleeping and being more short-tempered and "snappy." (R. at 302.)

On March 13, 2000, Dr. Robert S. Brown Jr., M.D., performed a psychiatric evaluation on Brookman. (R. at 322-28.) Brookman complained of difficulty sleeping and feeling "shaky" at times. (R. at 323.) Brookman also reported that she had no

-5-

recollection of her childhood. (R. at 324.) Brookman reported her mood as "down and helpless." (R. at 326.) Dr. Brown diagnosed adjustment disorder with anxious mood. (R. at 327.) He placed Brookman's Global Assessment of Functioning, ("GAF"), score at 70.[2] (R. at 327.) Dr. Brown stated that Brookman's prognosis was good and that she might benefit from treatment with antidepressants. (R. at 327.) Dr. Brown stated that Brookman exhibited enough sustained concentration and persistence to do simple work. (R. at 328.) Dr. Brown made no other statement regarding Brookman's work-related abilities.

On March 31, 2000, a state agency psychologist[3] completed a Psychiatric Review Technique form, ("PRTF"), stating that Brookman did not suffer from a severe mental impairment. (R. at 329-37.) Oddly enough, this psychologist stated that the disposition was based on consideration of a personality disorder only. (R. at 329.) This PRTF also stated that there was no evidence in the record of any depressive syndrome. (R. at 332.)

Generelly noted on October 2, 2000, that Brookman was then taking Prozac for depression. (R. at 386.) On December 5, 2000, Generelly noted that Brookman had been seen in her office for severe depression and wanting to kill herself. (R. at 382.) Generelly arranged for Brookman to be admitted for inpatient psychiatric treatment.

---

[2]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

[3]The signature of this psychologist is illegible. (R. at 329.)

(R. at 382.)

F. Daniel McClure, Ph.D., a licensed clinical psychologist, provided a letter dated December 3, 2000, documenting a psychological consultation which occurred on October 26, 2000. (R. at 358-60.) McClure stated that Brookman's mood was quite depressed and her affect was highly labile. (R. at 358.) He noted that Brookman spent a good deal of time crying during the interview and psychological testing. (R. at 358.) Brookman reported significant and debilitating depression which had worsened substantially subsequent to an automobile accident. (R. at 358.) McClure stated that, clinically, Brookman showed virtually all of the hallmarks of a major depression. (R. at 359.) McClure stated that Brookman was a "woman virtually paralyzed by the impact of her depression" and "immobilized by her despondency." (R. at 359.) McClure stated that Brookman would have considerable difficulty in the vocational setting. (R. at 359.) In particular, McClure stated that Brookman would have difficulty following instructions, working independently and dealing with supervisors and the general public. (R. at 359.) McClure diagnosed Brookman with major depressive disorder, recurrrent, and he placed her GAF score at 55.[4] (R. at 359-60.)

McClure also completed an assessment of Brookman's work-related abilities. (R. at 361-63.) McClure stated that Brookman had a poor ability to relate to co-workers, to deal with the public, to deal with work stresses, to maintain attention/concentration, to understand, remember and carry out complex and detailed

---

[4] A GAF of 51-60 indicates that "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

-7-

job instructions, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 361-62.)

A Discharge Summary dated December 13, 2000, from the University of Virginia Health Sciences Center reflects that Brookman was admitted for inpatient psychiatric treatment from December 6, 2000, to December 13, 2000. (R. at 365-71.) The Discharge Summary reflects that Dr. Pamila Herrington, M.D., was Brookman's attending psychiatrist. (R. at 371.) Brookman was diagnosed with major depressive disorder, moderate, without psychosis. (R. at 365.) Brookman's GAF score was listed as 20.[5] (R. at 365.) Brookman reported worsening depressed mood over the previous three months and suicidal ideation for the previous two weeks. (R. at 365.) Brookman complained of feeling helpless, hopeless and overwhelmed, experiencing crying spells all of the time, sleep disturbances, decreased concentration, anhedonia, decreased energy, decreased libido and lack of enthusiasm. (R. at 365.) Brookman reported that she had been treated with Prozac for the previous year which had increased her mood swings and caused emotional lability. (R. at 366.) The Summary reflects that on Brookman's admission, her judgment and insight were impaired. (R. at 368.)

In March 2001, Brookman began treatment by Dr. Daksha Patel, M.D., and Dr. Zachariah C. Dameron III, M.D., with the University of Virginia Health System Outpatient Psychiatric Services. (R. at 408-11.) According to the Intake Summary, Brookman reported that she had been diagnosed with major depressive disorder in 1980. (R. at 409.) Brookman stated that she was treated with antidepressants until 1995 when she discontinued using the medication because she "was feeling fine." (R.

---

[5]A GAF of 11 to 20 indicates some danger of hurting self or others. *See* DSM-IV at 32.

-8-

at 409.) Brookman reported suffering from a worsening of psychiatric symptoms for the three months prior to a psychiatric admission on December 6, 2000. (R. at 408.) Brookman complained of suffering from hopelessness, helplessness, worthlessness, crying spells, anhedonia, decreased energy, decreased motivation, decreased libido, decreased concentration, increased appetite and decreased sleep during this period. (R. at 408.) Brookman also reported that her treating physician had been treating her with Prozac since 1999. (R. at 408.)

On April 20, 2001, Dr. Randolph E. Lanford, M.D., provided a letter stating that Brookman had been disabled since 1998 because of chronic low back pain/lumbar disc disease which had resulted in left lower extremity radiculopathy. (R. at 394.) Dr. Lanford stated that Brookman also suffered from significant depression since 1998, which had not improved significantly since that time. (R. at 394.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 416.920 (2004); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2005).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(West 2003); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated, February 12, 2003, the ALJ found Brookman disabled as of December 6, 2000, but he denied Brookman's claim for benefits prior to December 6, 2000. (R. at 20-34.) In reaching his decision, the ALJ specifically found that Brookman did not suffer from a severe mental impairment prior to December 6, 2000. (R. at 30-31.)

In her brief, Brookman argues that the ALJ's decision is not supported by substantial evidence. (Motion For Summary Judgment, ("Plaintiff's Brief"), at 8.) In particular, Brookman argues that the ALJ erred by finding that she did not suffer from a severe mental impairment prior to December 6, 2000, and in failing to give controlling weight to the opinions of Brookman's treating physician. (Plaintiff's Brief at 8.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This

-10-

court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). While an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

As stated above, Brookman challenges the ALJ's finding that she did not have a severe mental impairment prior to December 6, 2000. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1521(a) (2005). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work

situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b) (2005). The Fourth Circuit held in *Evans v. Heckler*, that "'"[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."'" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

Based on my review of the record, I find that substantial evidence does not exist to support the ALJ's finding that Brookman did not suffer from a severe mental impairment prior to December 6, 2000. The uncontradicted evidence contained in this record shows that Brookman's mental condition had deteriorated to the point that on December 6, 2000, she had to receive inpatient psychiatric treatment. The uncontradicted evidence also shows that Brookman's mental impairment placed significant restrictions on her work-related abilities some time prior to December 6, 2000. As the ALJ noted in his opinion, psychologist McClure diagnosed Brookman with major depression and placed significant restrictions on Brookman's work-related activities. (R. at 26.) The ALJ, however, incorrectly stated that McClure evaluated Brookman on the date of his letter, December 3, 2000, only three days before her inpatient psychiatric hospitalization. (R. at 26.) To the contrary, McClure's December 3, 2000, letter states that he saw Brookman on October 26, 2000, more than a month before her hospitalization. (R. at 358.) At that time, McClure found that Brookman's depression was so severe that "her despondency has reached paralyzing proportions." (R. at 359.) McClure's assessment also placed significant restrictions on Brookman's work-related abilities. (R. at 361-63.)

The record also shows that, prior to 2000, McClure's mental condition was such that her treating health care providers prescribed anti-anxiety and antidepressant medication. Also, in March 2000, Dr. Brown diagnosed Brookman with an adjustment disorder with anxious mood. (R. at 327.) Dr. Brown placed Brookman's GAF at 70, which recognized that she had some difficulty with occupational functioning. (R. at 327.) While Dr. Brown did not complete an assessment of Brookman's work-related abilities, he did suggest that her concentration and persistence were such that she might be limited to simple work. (R. at 328.) Furthermore, one of Brookman's treating physicians, Dr. Lanford, indicated in April 2001, that he had treated Brookman for "significant depression" since 1998 and that this depression continued to disable Brookman. (R. at 407.)

The only other evidence contained in this record which purports to address Brookman's mental condition prior to December 2000 is a PRTF completed by a nonexamining state agency psychologist on March 31, 2000. (R. at 329-37.) As noted above, this PTRF did state that Brookman did not suffer from a severe mental impairment. (R. at 329.) Nonetheless, it is evident from the face of the PRTF that the evaluator did not address whether Brookman suffered from severe depression or anxiety, but rather only considered whether Brookman suffered from a severe personality disorder, a condition that is not supported by any psychological or psychiatric evidence relevant to the time period prior to December 6, 2000.

For all of these reasons, I find that substantial evidence does not exist in the record to support the ALJ's finding that Brookman did not suffer from a severe mental impairment prior to December 6, 2000. That being the case, I further find that

-13-

substantial evidence does not support the ALJ's finding that Brookman was not disabled prior to December 6, 2000.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the ALJ's finding that Brookman did not suffer for a severe mental impairment prior to December 6, 2000; and

3. Substantial evidence does not exist in the record to support the ALJ's finding that Brookman was not disabled under the Act and was not entitled to benefits prior to December 6, 2000.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Brookman's and the Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand Brookman's claim to the Commissioner for further development with regard to the effect of Brookman's mental impairment on her work-related activities prior to December 6, 2000.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. §636(b)(1)(C) (West 1993 & Supp. 2005):

-14-

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Norman K. Moon, United States District Judge.

DATED: This 27th day of September, 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE